## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| TIFFANY THOMPSON and CURTIS ) <br> THOMPSON, Individually and as Natural ) <br> Parents of BRYCE THOMPSON and ) <br> NOBLE THOMPSON, minors, ) <br> ANTANEESHA FLETCHER, Individually ) <br> and as Natural Parent of AMAYA LEGG, ) <br> KALEB LEGG, KODE LEGG, and KEVIN ) <br> LEGG, minors, NEEKIESHIA FLETCHER,) <br> Individually and as Natural Parent of ) <br> ROBERT YOUNG, SIERRA BALLARD, ) <br> and SYDNEY FLETCHER, minors, ) <br> ROBERTA JOHNSON, DASHAWN ) <br> DINGLE, Individually, and as Natural ) <br> Parent of ARTIST GLENN, a Minor, and ) <br> TRINA DINGLE, RACHE BLAKEY ) <br> Individually, and as Natural Parent of ) <br> LOUIS BLAKEY, a minor, LAUREN ) <br> LACEY, Individually and as Natural Parent ) <br> of CHEYENNE JEFFERSON and JADA ) <br> JEFFERSON, minors, KAREN LACEY, ) <br> Individually and as Natural Parent of ) <br> KALA ADAMS and JOSEPH WATSON, ) <br> minors, and next friend to AARON ) <br> LACEY, LA'CHANNA CORNELIUS, as ) <br> Natural Parent of BRENNA CORNELIUS, ) <br> KIMMY CALHOUN-EWELL, Individually ) <br> KARINA WILSON, Individually, and as ) <br> Natural Parent to DE'LA JONES, DE'LAN ) <br> WILSON, and DE'VIAN JONES, minors, ) <br> and as Natural Parent of KIMBERLY ) <br> SMITH, RUSSELL TAYLOR and LESLIE ) <br> TAYLOR, as Natural Parents of RYAN ) <br> TAYLOR and RUSSELL TAYLOR, III, ) <br> Minors, SHANTIA DAVIS Individually ) <br> and as Natural Parent of CHRIST ) <br> ROBINSON, MONTEZ DAVIS, and ) <br> QUENIYA BLACKMAN, minors, ) <br> QUENTON BLACKMAN, AND JEWEL ) <br> GREEN, BRANDY JONES Individually ) <br> and as Natural Parent of ANISHA ) <br> KINARTAIL and DAYLON LEWIS, ) | Case No.1:09-cv-0701-LJM-DML |

1

| | |
|---|---|
| minors, LISA GOLDEN, MICHELLE JOHNSON, Individually and on behalf of her Natural child MACAIYA CHANEY, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) |
| CEC ENTERTAINMENT, INC. d/b/a CHUCK E. CHEESE, and KEN MCGILL, Former Manager, RICHARD M. FRANK, Chairman, MICHAEL H. MAGGUSEAK, President and CEO, and CHRISTOPHER D. MORRIS, Treasurer, | ) ) ) ) ) ) ) |
| Defendants. | ) |

**PLAINTIFFS' SECOND AMENDED COMPLAINT FOR DAMAGES AND TRIAL BY JURY**

**I.
PRELIMINARY STATEMENT**

1.  This action seeks declaratory, injunctive and equitable relief, including attorney fees and costs, for violation of public accommodation law, assault, battery, theft, breach of contract, and intentional infliction of emotional distress based on race suffered by Plaintiffs while dining at various locations owned and operated by Defendant Chuck E. Cheese and managed by Defendant Ken McGill. Such violations have been condoned by CECs' Board as directed by Richard Frank, Chairman, Michael Magguseak, CECs' President, and Christopher Morris, its Treasurer.

**II.
JURISDICTION**

2.  Jurisdiction is invoked pursuant to 42 U.S.C. Sec. 2000a et seq. which provides that all persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined,

without discrimination or segregation on the ground of race, color, religion, or national origin and the common law of the State of Indiana, which prohibits discrimination or segregation in places of public accommodation.  Jurisdiction is further asserted pursuant to 42 U.S.C. 1985(3) and 42 U.S.C. 1986.

## III.
## PARTIES

3.  **All of the Plaintiffs are United States citizens of African-American descent** and live in the Southern District of Indiana.  They were denied the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodations without discrimination or segregation on the ground of race, color, religion, or national origin as provided by 42 U.S.C. Sec. 2000a et seq. in the Southern District of Indiana.  Defendants' Corporation, CEC Entertainment, conducts business in the Southern District of Indiana.  Defendant Ken McGill managed the Defendants' facilities where the violations occurred.

## IV.
## FACTS

## COUNT I

4.  On July 30, 2008, Plaintiffs Tiffany Thompson and Curtis Thompson, African-Americans planned a fourth birthday party for their son, Bryce Thompson, at Defendant Chuck E. Cheese's facility located at 4910 West 38th Street, Indianapolis, Indiana [hereinafter "38th Street facility"].

5.  Upon arrival at the facility on or about 5:45 p.m., Defendant Tiffany Thompson observed manager Defendant McGill having confrontations with African-American people.

6.  In one instance, Defendant McGill snatched a cup from an African-American

3

child and poured out her drink because he said that she was using the wrong cup.

7. On or about 6:15 p.m., Defendant McGill told the Thompsons that they needed to get a box for their food.

8. In the meantime, Defendant McGill stopped to harass a Hispanic family and snatched a cup of strawberries from another young African-American child and threw the strawberries in the trash.

9. Defendant McGill turned to another African-American family and said "the bitch should not have gotten the strawberries".

10. Defendant McGill's actions caused Plaintiff Bryce Thompson to urinate on himself and have a seizure.

11. Even after Plaintiff's seizure, Defendant McGill would not allow the Thompson family to leave the premises and attempted to have them arrested.

12. The Thompson family made several attempts to communicate with Defendant CEC Entertainment to explain that Defendant McGill was a racist and he was rude to children and constantly injuring them. Defendants totally ignored these protestations.

13. Rather than perform a thorough investigation, Defendant CEC Entertainment eventually moved Defendant McGill to another facility, namely its Castleton Square facility located at 5501 East 82nd Street, Indianapolis, Indiana [hereinafter, "Castleton facility"].

## COUNT II

14. On February 13, 2009, Plaintiff Neekieshia Fletcher, an African-American, took her three children to Defendants' Castleton facility for Plaintiff Amiyah Leggs' birthday party.

15. The birthday child arrived with her grandmother, Plaintiff Roberta Johnson, an African-American. Upon arrival, Defendant McGill, who had been transferred from Defendants'

38th Street facility, refused to seat the party without the natural mother being present.

16. Defendant McGill then cancelled the party without providing service to anyone in the party and thus violated the Statute.

## COUNT III

17. On February 13, 2009, Plaintiff Antaneesha Fletcher, an African-American went to her daughters' party at Defendants' Castleton facility.

18. Plaintiff's daughter, Amiyah Legg, was taken to the party by her grandmother, Plaintiff Roberta Johnson.

19. Defendant McGill was told that the party was reserved online but he refused to start the party as directed by the grandmother.

20. Defendant McGill said the party was cancelled because Antaneesha was not there on time.

21. Defendant McGill said that he would give Plaintiff Fletcher and her daughter a crummy party if that is what they wanted and that they had forty (40) minutes or leave.

22. Defendant McGill then said that everyone in their party had to leave because all the tables had been taken. Defendant McGill violated federal law in refusing to serve the Fletcher party.

## COUNT IV

23. On November 15, 2008, Plaintiff Dashawn Dingle, an African-American, had booked a party online for her child, Plaintiff Artist Glenn, age two (2).

24. The party started at 12:00 p.m. and at or about 1:15 p.m., Plaintiff Dashawn Dingle started moving her food like the other guests outside the party area.

25. Defendant McGill ordered the Dingle party, which were all African-Americans,

to leave while letting the Caucasian families stay. The Caucasian families expressed shock at this treatment.

26. Defendant McGill was told that the Dingle family had ordered another pizza. Plaintiff Dashawn Dingle had to pay for the pizza and was ejected anyway.

27. Defendant McGill instructed a waitress to place reserved signs on all the tables.

28. Defendant McGill told the Dingle family that he had called the police and that they had to leave. Defendant McGill violated Federal Law in not serving the pizza that the Dingles ordered.

## COUNT V

29. On November 15, 2008, Trina Dingle, an African-American was at the party for her grandchild, Artist Glenn.

30. Defendant McGill was rude to her daughter, Plaintiff Dashawn Dingle, when she asked why other Caucasian families were allowed to stay and sit in the dining room.

31. Defendant McGill said that they need to take their things and go out to the parking lot. He said "you people have to leave".

32. Plaintiff Trina Dingle called Shellie in Risk Management at Defendant CEC Entertainment offices and told her that Defendant McGill was discriminating against African-American people and explained how she observed Defendant McGill discriminating against other African-American families.

33. In refusing to investigate and take action, Defendant CEC Entertainment kept Defendant McGill in his position thereby demonstrating its racial hatred.

## COUNT VI

34. On July 30, 2008, Plaintiff Rache G. Blakey, an African-American, and her seven

(7) year old son, Louis Blakey, went to the Castleton facility.

35. Defendant Ken McGill, the current manager, had Rache Blakey and her son ejected and placed on a "no trespass" list without providing them service.

## COUNT VII

36. On December 20, 2008, at 11:30 a.m., Plaintiff Karen Lacey, an African-American, took her grandson Aaron Lacey, age four (4), and her children, Kala Adams, age seventeen (17), and Joseph Watson, age fifteen (15), to have a birthday party at Defendants' Castleton facility.

37. At that time, the restaurant was virtually empty but Defendant McGill only had two tables for the twelve people and ten pizzas.

38. Defendant McGill refused to allow extra tables even though the facility was empty.

39. When Plaintiffs complained, Defendant McGill told Plaintiffs to take the two (2) tables or leave the restaurant.

40. Defendant McGill called the police and had Plaintiffs evicted, without service, and told them to never return because they were on the "no trespass list".

41. Defendant McGill, in a rude and insulant manner said, "I don't want you people in my restaurant".

42. Plaintiffs called and emailed corporate several times to no avail.

## COUNT VIII

43 On December 20, 2008, at the Castleton facility, Plaintiff Lauren Lacey, an African-American, arrived a little after 12:00 p.m.

44. Fifteen (15) people had ordered pizza. Defendant McGill told Plaintiff Lacey that

they could only have one table per party no matter how many people were in the party.

45. Defendant McGill refused to give another table and called the police.

## COUNT IX

46. On July 26, 2008, Plaintiffs Shantia Davis, Quenton Blackman, Christ Blackman, and Jewel Green, all African-Americans, went to Defendants' 38th Street Facility.

47 Plaintiff Shantia Davis, African-American, had booked a party for 4:00 p.m. The group arrived early and ordered salads and drinks and was harassed by Defendant McGill who called the police and had the Plaintiffs ejected from the premises. Plaintiff Green asked for a refund and was told "I want you out of the building and there will be no refund."

48. Defendant McGill violated federal law by refusing service to Plaintiff Davis and her party.

49. Plaintiffs were not given their money back. When the police arrived, they said "It was petty that they had to keep coming out repeatedly to Chuck E Cheese."

## COUNT X

50. In August 2008, Plaintiff La'Channa Cornelius, African-American, had booked a party by phone for her daughter Brenna Cornelius, age two (2). She went to Defendants' Castleton facility and paid a Fifty Dollar ($50.00) deposit.

51. On September 13, 2008, Plaintiff Cornelius arrived at the facility at 12:30 p.m. for a 1:00 p.m. party. She observed Defendant McGill being rude to all people of color.

52. Defendant McGill told Plaintiff that she did not have a reservation. Plaintiff showed Defendant McGill her receipt but he said that there was nothing he could do.

53. Plaintiff called Defendants' Corporate Office that told her that she had a party booked but that the system showed that Defendant McGill had taken the party out of the system.

54. At or about 1:45 p.m., Plaintiff was seated. Defendant McGill called the police and said that they needed to leave.

55. The party should have been ninety (90) minutes but instead it was approximately fifty-five (55) minutes. Defendant McGill refused to give Plaintiffs a refund and ejected them.

## COUNT XI

56. Plaintiff Kimmy Calhoun-Ewell, African-American and her daughter, Kimberly Smith, went to the Defendant's Castleton facility on January 19, 2009 at 2:15 p.m.

57. Plaintiff Calhoun-Ewell ordered an 'all you can eat' buffet. After paying for same, she went to a table where Karina Wilson had a birthday party. The waitresses were cleaning the table and Plaintiff went to a vacant booth. Defendant McGill approached her and said "you can't sit there".

58. Plaintiff then went to another vacant booth and sat down. Defendant McGill told Plaintiff that she could not sit there either.

59. Plaintiff asked "then where am I supposed to eat?" Defendant said that he did not know because the party was over.

60. Plaintiff replied that she had just purchased an all you can eat buffet and needed some place to sit and eat.

61. Defendant McGill said that in order for Plaintiff to sit down, she needed to purchase another meal. Plaintiff replied that she had just purchased an all you can eat buffet.

62. Defendant McGill then called the police and Plaintiff was ejected. The police officer worked for Defendant Chuck E. Cheese and took Plaintiff's plate and threw it away at Defendant McGill's direction. Plaintiff immediately called corporate but corporate ignored her calls.

## COUNT XII

63. On January 19, 2009, Plaintiff Karina Wilson along with her three (3) children De'la Jones, De'vian Jones, and De'lan Wilson, all African-Americans, went to the Defendants' Castleton facility.

64. Plaintiff Wilson purchased an all you can eat salad bar and drink. She was late for the party. She accidentally dropped her food and Ken McGill said if you want to eat you need to "stand up". A white family was seated.

65. Plaintiff McGill stated that Plaintiff could not sit at a certain booth as Defendant McGill had her sister Plaintiff Kimmy Calhoun-Ewell removed.

66. Plaintiff McGill said, "Do you people understand English? You need to go back to Africa."

67. Defendant McGill purposely bumped Plaintiff Wilson and Defendant McGill said "I can get you for assault."

67. Defendant McGill cursed Plaintiff Wilson in front of her children and told the police "lock her ass up".

68. Plaintiff called Defendants' corporate office and advised they would "handle it".

## COUNT XIII

69. On December 20, 2008, Plaintiff Russell Taylor, along with his children, Ryan Taylor, age six (6), and Russell Taylor, III, age seven (7), all African-Americans, along with other guests arrived at Defendants' Castleton facility at approximately 11:30 a.m.

70. After ordering ten (10) pizzas, Plaintiff was given two (2) tables for twelve (12) people. Plaintiff asked for more tables.

71. Defendant McGill refused to give Plaintiff more tables and stated "I do not want

you people in my restaurant."

72. Plaintiff asked for his money back and a receipt. Defendant McGill said he could not get a receipt and ejected the Taylors, called the police and banned them from the restaurant. Defendant McGill repeated several times that "I do not want you people in my restaurant."

73. Plaintiff called Defendants' corporate offices to explain Defendant McGill's blatant discrimination.

72. Plaintiff did receive a call from corporate wherein Plaintiff stated that he needed a letter of apology for the racial hatred that he experienced.

73. As of the date of this filing of this lawsuit, Plaintiff Taylor has been completely ignored by Defendant CEC Entertainment.

## COUNT XIV

74. Plaintiff Brandy Jones along with her children, Anita Kinartail, age three (3), and Daylon Lewis, one (1), all African-Americans went to Defendants' Castleton facility on December 20, 2008 as a "walk in".

75. About twenty (20) people showed up and had two (2) booths. As Plaintiff Jones sat down, Defendant McGill said that she could not sit because she did not buy a pizza. Plaintiff Jones ordered a pizza.

76. When Plaintiff's friend, Racquel Pinkston arrived, Plaintiff Jones put her pizza number on Ms. Pinkston's table.

77. Plaintiff McGill came over and said that they could not have the seat. Plaintiff McGill said that her party of fifteen (15) could only have one (1) booth.

78. Plaintiff Jones complained and said that she was going to the East Washington Street Chuck E. Cheese [hereinafter, "Washington Street facility"] since everybody could not sit

together.

79. Plaintiff McGill overheard the conversation and said that she would have the same problem when she gets to the Washington Street restaurant.

80. Plaintiff Jones went to Defendants' Washington Street facility and was denied entrance. Plaintiff McGill said that he would call the Washington Street restaurant to tell them not to let her party in.

## COUNT XV

81. Plaintiff Lisa Golden, African-American, went to Defendants' Washington Street Facility after she talked to her daughter with instructions to get a table.

82. Plaintiff Golden arrived at Defendants' Washington Street facility restaurant around 5:00 p.m. As she waited inside, her daughter called to report that she was being denied entrance.

83. Plaintiff Golden was told at the door that her daughter Brandy Jones and the party could not come in because they received a call from the Castleton facility to not let the Jones party in. They were instructed to leave the premises.

84. The police were waiting at the door.

85. Plaintiff Golden called Defendants' corporate office and was hung up on since they said they had heard all about the incident.

86. Plaintiff Jones called Defendants' corporate office three (3) times, specifically on December 22, 2008, the middle of January 2009, and then the end of January 2009.

## COUNT XVI

87. Plaintiff Michelle Johnson, along with her daughter, Macaiya Johnson, age two (2), both African-Americans, went to Defendant's Castleton facility on December 20, 2008 at

approximately 4:00 p.m.

88. The party was booked at 4:00 p.m. and she arrived at the Castleton facility at 4:15 p.m.

89. Plaintiff Johnson and Defendant McGill got into a dispute over cups. Defendant McGill came with police and asked Plaintiff to pay her bill. Plaintiff Johnson said she would pay her bill and Defendant McGill responded, "I'm not sure with your kind."

90. Defendant McGill refused to give Plaintiff's child the party even though she paid a deposit.

91. The minor child, Plaintiff Macaiya Chaney, started crying when Ken McGill threatened to have her arrested.

## COUNT XVII
## ASSAULT AND BATTERY

92. On December 20, 2008, at Defendants' Castleton facility, Defendant McGill committed the offense of assault and battery on Plaintiff Cheyenne Jefferson, age seventeen (17).

93. Defendant McGill said to Plaintiff Jefferson, "You need to get your family and leave." as he pushed her.

94. Such an assault and battery on teen age child is beyond human decency. Defendant McGill was implementing the corporate philosophy against blacks and other people of color and his actions are imputed to the Board of CEC Entertainment as shown.

## COUNT XVIII
## ASSAULT AND BATTERY

95. On December 20, 2008, at Defendant's Castleton facility, Defendant McGill committed the offense of assault and battery on Plaintiff Joseph Watson, age fifteen (15).

96. In ejecting Plaintiff Watson's mother from the facility, Defendant McGill

snatched Plaintiff Watson's tray in an angry manner thereby "brushing him" with the tray. In a racially hatred manner, he said that "you people need to leave."

## XIX
## FALSE IMPRISONMENT

97. Plaintiffs Thompson's minor child became so upset that he had a seizure. When the Thompson's attempted to leave the premises to get medical care, Defendant McGill prevented them from leaving.

98. That such unlawful detention was a violation of Plaintiffs' personal liberty and constituted false imprisonment.

99. Plaintiffs have been damaged by Defendant McGill's false imprisonment.

## COUNT XX.
## CIVIL RIGHTS VIOLATION

100. All of the Plaintiffs were denied their afforded rights under 42 U.S.C. Sec. 2000a et seq. Defendants, and each of them, violated 42 U.S.C. 1985(3) and 42 U.S.C. 1986.

## XXI.
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

101. That the Defendants' acts of racially derogatory comments, falsely accusing the Plaintiffs, and unlawfully detaining them, assaulting and pushing the teenagers was heinous and beyond the standards of civilized decency and were intentional and reckless. Such acts were atrocious and utterly intolerable in a civilized community.

102. Plaintiffs were in shock and the minor children were hysterical.

103. Such acts resulted in the negligent infliction of emotional distress because Defendant McGill was negligent and as a proximate result thereof, Plaintiffs were damaged.

104. That such acts were intentional and as a result thereof, Plaintiffs were damaged

because of severe emotional distress as a result of Defendants' conduct.

## XXII.
## NEGLIGENT HIRING, RETENTION AND SUPERVISION
## OF DEFENDANT KEN MCGILL

105.   On information and belief, Defendant McGill has offended other patrons to the restaurant and discriminated against African-Americans, and other people of color.

106.   That Defendant Chuck E. Cheese failed to exercise reasonable care in hiring Defendant Ken McGill and has been negligent in hiring, retaining, and supervising Defendant McGill as will be shown at trial.

## XXIII.
## THEFT OR CONVERSION

107.   In all instances, where Defendants refused to give Plaintiffs refunds after calling the police and ejecting them from the facility without providing service, Defendants committed theft or conversion.

108.   Subject to proof, Defendants should be liable to each Plaintiff whose money was taken by an award of actual damages and punitive damages as well.

## XXIV
## BREACH OF CONTRACT

109.   In all instances where Plaintiffs booked a party, the police were called and they were ejected without having their party, Defendants are liable for breach of contract.

## XXV
## CIVIL CONSPIRACY

### BACKGROUND

110.   Defendant CEC Entertainment, Inc., together with its subsidiaries, develops, operates, and franchises family dining and entertainment centers under the name Chuck E Cheese

in the United States and internationally. Its stores, with robots and animated entertainment, caters to families with children ages two (2) to twelve (12) years of age. The company operates over five hundred (500) stores in forty-four (44) states and Canada; its franchises operate forty-six (46) stores in the United States, Puerto Rico, Guatemala, Chile, Saudi Arabia, and the United Arab Emirates. CEC's Annual Income is estimated to be around One Billion ($1,000,000,000) per year.

## CORPORATE PHILOSOPHY

111. Subject to strict proof at trial, Plaintiffs believes that Defendant CEC's management has enacted a corporate philosophy and policy that forces its managers and supervisors to scrutinize closely families of color, particularly when it comes to its allocation of tables, its groups, its salad bars, cups and juices. By strict adherence and scrutiny, Defendant CEC can "turn over its tables" and have a "revolving door" type of patronage with personal bias against peoples of color. White families are not so treated.

112. Plaintiffs believe that the civil conspiracy reaches all the way into Defendant CEC's Board Room. Subject to proof, Plaintiffs believe that Defendant Richard M. Frank, CEC's Chairman, Defendant Michael H. Magguseak, CEC's President and CEO, and Defendant Christopher D. Morris, Treasurer, have collaboratively and are aware of the conspiracy and are active participants therein. The Corporate culture is evidenced by a pattern and practice of racial hatred that has occurred in all three of CECs' Indianapolis Restaurants. Accordingly, the facts of this case fall within the exception to the intra corporate conspiracy doctrine since Defendants Richard Frank, Michael Magguseak, Christopher Morris, and Ken McGill exhibited a personal bias against the Plaintiffs as defined in Hartman v. Board of Trustees of Community College District NO. 508, 4 F.3d 465,470 (7th Cir.1993).

113. Defendant Chuck E. Cheese should be held liable for the harm caused by

Defendant McGill.

114. Defendant Chuck E. Cheese should be held responsible since it knew that Defendant McGill had tendencies to cause harm or tendencies that would have been discovered by reasonable investigation.

115. That Defendant Chuck E. Cheese had a duty to protect Plaintiffs from harm inflicted by its employees.

116. That Defendant Chuck E. Cheese failed to exercise reasonable care.

117. For its blatant violation of Federal Law, negligence and repeated racial hatred, each of the Plaintiffs asserts that punitive damages of Fifty Thousand Dollars ($50,000) for each Plaintiff and minor child should be assessed against Defendants.

## XXVI.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand that this case be placed on the Court's "fast docket" for injunctive relief, a trial by jury of all issues properly so triable, damages, including punitive, costs, attorney fees, and for all other just and proper relief in the premises.

Respectfully submitted,

**ROBERTS & BISHOP**

/s/ Kenneth T. Roberts
Kenneth T. Roberts, Ind. Atty. No. 6099-49
Tasha R. Roberts, Ind. Atty. No. 22520-49
Adam Lenkowsky, Ind. Atty. No. 24277-49

Kenneth T. Roberts
Tasha R. Roberts
Adam Lenkowsky
**ROBERTS & BISHOP**
118 North Delaware Street
Indianapolis, IN 46204
Telephone: (317) 631-0172
Facsimile: (317) 631-0178